Berberich, Appellant, *v.* Berberich.

Argued September 30, 1955. Before STERN, C. J., STEARNE, MUSMANNO and ARNOLD, JJ.

*Fred F. Wolf,* with him *Louis Rosenberg* and *Lorraine L. Bieno,* for appellant.

*Fred Chalmers Houston, Jr.,* with him *Charles B. Jarrett* and *Houston & Houston,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, December 1, 1955:

Clarence G. Berberich, the original plaintiff in this case, and Emma Berberich, the original defendant, were married on October 14, 1909, and lived together until December, 1946, when Mrs. Berberich left the common domicile, taking with her articles of furniture, bank accounts, shares of stock, building and loan association passbooks, bonds, life insurance policy, and other personal papers.

On July 14, 1948, the plaintiff-husband filed a bill of complaint praying that the Court order his wife to restore to him all personal property which she had removed from their home, as well as decree that the wife reconvey to him in his name alone the two pieces of real property held by them in entireties. The plaintiff claimed that the real properties belonged to him exclusively and that his wife's name had been added to the deeds as a matter of convenience to him. This was also true, he averred, with regard to title to certain items of personalty. The wife denied that her name formed part of the title ownership only as a matter of convenience to her husband, and asserted that while it was true he had made the original monetary outlay for the real and personal property, she had become part-owner because of the services she had rendered as a devoted wife, faithfully attending to her household duties and performing many arduous tasks which the husband ignored.

On October 14, 1948, the parties were divorced a vinculo matrimonii. When the case came on for a hearing on March 23, 1949, the attorneys in the case prepared a stipulation in an attempt to settle the complicated proprietary rights in an amicable and equitable manner. The husband signed the stipulation but the wife refused to affix her signature to the document. The hearing was continued.

On October 19, 1949, the plaintiff died, and T. T. Newhams, executor of his estate, was substituted as plaintiff. He filed an amended bill of complaint, asserting that the original parties, because of the negotiations which had taken place at the time of the Court hearing on March 23, 1949, had in effect entered into an agreement even though the wife refused to sign the written evidence of the agreement. The substituted plaintiff prayed that the items of supposed agreement be enforced by appropriate decree. The case was scheduled for another hearing.

On September 20, 1952, Mrs. Berberich was adjudicated an incompetent and a guardian was substituted as defendant in her behalf. On September 26, 1952, the plaintiff's executor died and Emma E. Newhams, executrix of the estate of T. T. Newhams, was substituted as plaintiff. On March 7, 1954, Mrs. Berberich died and Ralph Berberich, her guardian, was substituted as personal representative of the deceased defendant.

These numerous changes in the identities of the party litigants did not abate the vigor of the current disputants at each proceeding, so that the issue of the original controversy continued until the final decree.

After hearing on September 20, 1952, on the amended complaint based on the alleged settlement, there was filed of record a stipulation approved by the Court disposing of the personal property in the case. As to the real property, on April 23, 1953, the Court entered a decree vesting title in Emma Berberich to the contested two parcels of real estate. The plaintiff filed exceptions which were dismissed, and this appeal followed.

It is the contention of the appellant that although Mrs. Berberich did not sign the stipulation prepared at the time of the first hearing in Court, she did at the second hearing on May 6, 1949 orally assent to its provisions, and that, therefore, under the authority of

*Zlotziver v. Zlotziver,* 355 Pa. 299, the appellee could not plead in defense the Statute of Frauds. In the *Zlotziver* case the parties had entered into an oral agreement in the office of the plaintiff's lawyer whereby the husband was to transfer certain real property to the wife. When he later refused to do this, the wife filed a bill in equity to compel specific performance. The husband pleaded the Statute of Frauds and this Court said: "The statute of frauds, however, does not absolutely invalidate an oral contract relating to land but is intended merely to guard against perjury on the part of one claiming under the alleged agreement. Accordingly, if the title holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and the oral agreement will be enforced." But there is as little resemblance between the *Zlotziver* case and the *Berberich* case, as there was harmony between the original parties in this case. In the *Zlotziver* case it was not disputed that the parties had actually entered into an oral agreement for what was intended to be a "complete" separation. In the instant case Mrs. Berberich never accepted the stipulation prepared by her attorney at the first Court hearing. The appellant argues that Mrs. Berberich was bound by the admission of her attorney in open court. The record does not show that Mrs. Berberich accepted her attorney's offer of settlement. On the contrary: "Mr. Winslow [attorney for Mrs. Berberich] : I may state, Mr. Magram [attorney for Mr. Berberich] and I five weeks ago drew up an agreement between both parties to this action, with the assistance of Mr. James H. Willis . . . And this agreement was signed by Mr. Clarence G. Berberich, to which I fully agreed. The Court: Was it signed by the defendant? Mr. Winslow: It is not signed by the defendant. I have recommended that

my client sign that agreement. The Court: What is the use of bringing this up? I cannot make your client sign any agreement. I can only decide the case."

The appellant is of the impression that since Mrs. Berberich did not rise in open court and denounce the proposed agreement that she is estopped from ever denying that she approved it. The adage that silence gives consent is by no means an incontrovertible truism. There may be circumstances where silence speaks with disapproval as loud as thunder.* If one is to go to the tree of adages for wisdom, one might obtain a more appropriate and satisfactory fruit from the branch bearing the proverb that "Actions speak louder than words." In this respect, how can it be doubted that Mrs. Berberich's refusal to sign the stipulation proclaimed quite emphatically her rejection of the proposed agreement? That the Court understood Mrs. Berberich's silence as disapproval is graphically established by the Court's remark: "I cannot *make* your client sign any agreement." (Emphasis supplied.)

Moreover, under the Statute of Frauds, Mr. Winslow could not bind his client in a transaction involving the transfer of title in real estate without written authority to do so, which demonstrably he did not have.

It is also to be noted that the stipulation under discussion was incomplete. Many of its items were left suspended in mid-air: one item (fifth paragraph) contained a large blank space, in which no insertion had been made, showing that the value of the furniture was not agreed upon, the exact amount of all bank accounts was in a nebulous state and actually remained an issue at the time of the May 6, 1949 hearing. The

---

* Robert Southey, the poet, put it:
"She never complains, but her silence implies
The composure of settled distress."

disposal of the house, the common residence of the parties, with its proceeds, was couched in vague and indefinite terms, for it does not state to whom the property was to be sold, how it was to be sold, when it was to be sold, or what disposition was to be made of the proceeds of the sale. The structure of this supposed stipulation was far from being self-supporting. Its gaping deficiencies and inconclusive provisions left it a leaning tower of legal inadequacy. In the case of *Beaver v. Slane,* 271 Pa. 317, 322, we said: " 'A court of equity will not enforce a contract unless it is complete and certain in all its essential elements. The parties themselves must agree upon the material and necessary details of the bargain, and if any of these be omitted, or left obscure or indefinite, so as to leave the intention of the parties uncertain respecting substantial terms of the contract, the case is not one for specific performance.' "

We find that the record substantiates the lower Court's findings in every respect, and that the decision to award title to the real estate to the heirs of Mrs. Berberich was, under the law and the facts, entirely correct.

Decree affirmed; costs to be divided equally.