## Freedman v. Tozzoli

C.P. of Lehigh County, no. 2004-C-2305.

*Kimberly D. Borland,* for plaintiff.
*Jeffrey S. Stewart,* for defendants.

BLACK, *J.,* February 17, 2005—This case arises from the termination of the plaintiff's employment. The plaintiff, Dr. Kristen Freedman, a podiatrist, seeks to recover money damages from the defendants, Douglas Tozzoli D.P.M., P.C., a professional corporation (the P.C.), and Douglas Tozzoli, the sole shareholder and director of the P.C. The plaintiff claims breach of her employment contract with the P.C. (Count I) and also sex discrimination in violation of the Pennsylvania Human Relations Act (the PHRA), 43 Pa.C.S. §951 et seq. (Counts II and III).

Before the court are the defendants' preliminary objections to the complaint on the ground that the parties'

dispute must be submitted to arbitration in accordance with the rules of the American Health Lawyers Association (AHLA), pursuant to paragraph 17 of the employment contract. For the reasons stated, we sustain the preliminary objections and direct the case to arbitration in accordance with the AHLA rules, but only if the defendants file a written stipulation agreeing to certain modifications of these rules. If the defendants do not agree to these modifications, the preliminary objections are overruled; and since the plaintiff's claim does not exceed $50,000, the case will then proceed through court-attached arbitration.

## FACTS

The pertinent facts, as set forth in the complaint,[1] are as follows: The P.C. is a professional corporation engaged in the practice of podiatric medicine in Allentown, Lehigh County, Pennsylvania. Tozzoli is the sole shareholder and director of the P.C.

On May 28, 2002, the plaintiff entered into a written employment agreement with the P.C. to work as a doctor of podiatric medicine. The agreement provided that the term of employment would be one year commencing on July 1, 2002, and that the plaintiff would be paid a salary of $40,000 plus a bonus.

The P.C. terminated the plaintiff's employment on November 5, 2002, approximately eight months prior to the expiration date under the agreement. The plaintiff contends that the termination was without cause, in breach

---

1. All references to the "complaint" are to the second amended complaint filed by the plaintiff on October 26, 2004.

of the agreement, and that it was based on her gender. According to plaintiff, Tozzoli stated to a co-worker that he preferred to work with a male associate and that he regretted having hired a female associate.

The agreement included a provision for alternative dispute resolution in the event of controversies or claims arising out of or relating to the agreement. This provision, in paragraph 17, states the following:

"(17) Except for controversies or claims arising under paragraph 14 [relating to a restrictive covenant], any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration in Allentown, Pennsylvania. Arbitration shall be in accordance with the rules and provisions established by the American Health Lawyers Association and shall be final and binding upon the parties, and a judgment upon the award rendered may be entered in any court having jurisdiction."[2]

The rules and provisions established by the AHLA are annexed as exhibit "A" to the plaintiff's memorandum in opposition to defendants' preliminary objections. These rules provide that a $2,475 administration fee is required to file a claim involving three parties.[3] This fee must be included with the request for arbitration.[4] In addition, the arbitrator may require the parties to deposit

---

2. Complaint, exhibit "A."

3. Alternative Dispute Resolution Service Rules of Procedure for Arbitration (AHLA rules), Appendix I at A-21, exhibit A to the plaintiff's memorandum in opposition to defendants' preliminary objections.

4. *Id.,* Rule 2.02(e) at A-9.

in advance of any hearings such sums as the arbitrator may deem necessary to cover the expense of the arbitration, including the arbitrator's fee.[5]

Under the AHLA rules the arbitrator may grant any remedy or relief that he or she deems just and equitable and within the scope of the arbitration agreement; but unless the parties agree otherwise, the arbitrator may not award "consequential, exemplary, incidental, punitive or special damages" unless arising from a tort unrelated to employment or the termination of employment.[6] The arbitrator may also assess "arbitration fees, expenses and compensation in favor of the prevailing party for good cause shown"; otherwise these items and the administration fee are divided equally between the parties.[7]

## DISCUSSION

Agreements to arbitrate disputes are valid and enforceable under Pennsylvania law, "save upon such grounds as exist in law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa.C.S. §7303. In this case the plaintiff opposes the defendants' request to arbitrate their dispute in accordance with the AHLA rules pursuant to the employment agreement. The plaintiff contends (1) that the PHRA claims are beyond the scope of the arbitration clause, (2) that the AHLA rules do not authorize the arbitrator to award attorney fees and compensatory damages on the same basis that a court could award these

---

5. *Id.,* Rule 7.03 at A-20.
6. *Id.,* Rule 6.06 at A-18.
7. *Id.*

items under the PHRA, and (3) that the AHLA arbitration process is prohibitively expensive, thereby deterring persons in the same position as the plaintiff from vindicating their PHRA claims. These contentions will be considered seriatim.

## I. *The Scope of the Arbitration Clause*

The first count of the complaint, which is directed against the P.C. for breach of the employment agreement, is clearly within the scope of the arbitration clause. The plaintiff alleges, however, that Counts II and III are beyond the scope of this clause because they assert violations of the PHRA. Count II is directed against the P.C. for violation of section 955(a) of the PHRA in terminating her employment by reason of her gender. Count III, also directed against the P.C., alleges a violation of section 955(e) of the PHRA for aiding and abetting the section 955(a) violation.[8]

Whether a particular dispute falls within the scope of a contractual arbitration provision is a matter of law to be decided by the court. *Huegel v. Mifflin Construction Co. Inc.,* 796 A.2d 350, 354 (Pa. Super. 2002). Pennsylvania has a strong public policy favoring the arbitration of dis-

---

8. We suspect that the plaintiff inended Count III to be directed against the individual defendant, Tozzoli. However, the only defendant named in this count, as in the other two counts, is the P.C. The complaint does not set forth any cause of action against Tozzoli. We note that claims against Tozzoli personally may not be subject to arbitration under the agreement because he was not a party to the agreement. But cf. *Smay v. E.R. Stuebner Inc.,* 864 A.2d 1266 (Pa. Super. 2004).

putes. *Commonwealth, Office of Administration v. Commonwealth, Pennsylvania Labor Relations Board,* 528 Pa. 472, 478, 598 A.2d 1274, 1277-78 (1991); *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 662-63, 331 A.2d 184, 185 (1975). Therefore, when there is doubt as to whether a controversy is within the scope of an arbitration provision, that doubt should generally be resolved in favor of arbitration.

Paragraph 17 of the agreement states that "any controversy or claim arising out of or relating to this agreement, or the breach thereof" shall be submitted to arbitration under the AHLA rules. This is a very broad arbitration clause. The phrase "relating to" extends beyond disputes "arising under" the agreement. Clearly, the plaintiff's claim that her employment was terminated in violation of the agreement because of sex discrimination is a claim that is "related to" the agreement. Therefore, we believe the PHRA claims are within the scope of the arbitration clause. See *Hearon v. AstraZeneca LP,* civil action no. 02-3189 (E.D. Pa. March 24, 2003) (holding PHRA sex discrimination claim subject to arbitration).

We note also that the plaintiff's claim of sex discrimination is inextricably tied to her breach of contract claim because both arise from the allegedly wrongful termination of the plaintiff's employment. Although the theories of liability and the measure of damages may be different, the evidence on all of the plaintiff's claims will overlap, and it would make little sense to try the breach of contract claim and the sex discrimination claims before different tribunals.

## II. *The Damages Recoverable Under the AHLA Rules*

The plaintiff also argues that the arbitration clause is invalid when applied to the PHRA claims because the AHLA rules do not permit the arbitrator to award the full measure of damages recoverable under the PHRA. The damages sought by the plaintiff in her PHRA claims include loss of wages, emotional distress damages, and attorney fees. There is no claim for punitive damages because these are not recoverable under the PHRA. *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998).

We see nothing in the AHLA rules that precludes the recovery of lost wages or emotional distress damages. Rule 6.06 provides in pertinent part:

"The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the arbitration agreement of the parties. . . . By submitting a dispute to arbitration under these rules, the parties agree that the arbitrator may not award and there shall be no claim available for consequential, exemplary, incidental, punitive or special damages in an action other than an action arising from a tort unrelated to employment or the termination of employment." [9]

This provision does not restrict the arbitrator from awarding the wage loss and emotional distress damages that the plaintiff is claiming. These types of damages are direct losses from the tortious conduct alleged. They are not considered "consequential, exemplary, incidental, punitive or special damages," such as would be precluded

---

9. AHLA rules, Rule 6.06 at A-18.

by Rule 6.06. The defendants' counsel agreed at oral argument that the arbitrator would have full authority to award both wage loss and emotional distress damages.

The issue of attorney fees presents a somewhat murkier problem. Under the PHRA, a court has discretion to award attorney fees to the prevailing party. Such an award is not automatic. Specifically, the PHRA provides:

"(c.2) If, after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the court *may* award attorney fees and costs to the prevailing plaintiff.

"(c.3) If, after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant has not engaged in or is not engaging in any unlawful discriminatory practice as defined in this act, the court *may* award attorney fees and costs to the prevailing defendant if the defendant proves that the complaint was brought in bad faith." 43 P.S. §962(c)(4)(c.2) and (c.3). (emphasis added)

It is likely that AHLA Rule 6.06 also allows for attorney fees to be awarded to the prevailing party on the same discretionary basis. As noted above, this section states that "the arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the arbitration agreement of the parties." Nevertheless, there remains some question as to whether an award of attorney fees would be considered consequential damages,[10] which are barred under AHLA Rule

---

10. Consequential damages are defined in Black's Law Dictionary, 54 (7th ed. 1999) as "[l]osses that do not flow directly and immediately from an injurious act, but that result indirectly from the act."

6.06 except for torts actions unrelated to employment or the termination of employment. Therefore, before we require the plaintiff to pursue her PHRA claims before the AHLA arbitrator, the defendants must file a stipulation with the clerk of courts confirming that the arbitrator may award attorney fees to the prevailing party on the plaintiff's PHRA claims on the same basis that such fees may be awarded by a court.

We are aware that AHLA Rule 6.06 states:

"The arbitrator may, in the award, assess arbitration fees, expenses, and compensation in favor of the prevailing party for good cause stated in the award. . . ." [11]

We doubt that this sentence was intended to include attorney fees since the very next sentence states, "If not assessed, arbitration fees, expenses, compensation and administration fees shall be divided equally among the parties." [12] It would be very surprising if unassessed attorney fees were to be "divided equally among the parties." For this reason we believe the reference to "arbitration fees" in Rule 6.06 was intended to cover the fees of the arbitrator.

The plaintiff suggests that an award of counsel fees to the prevailing party should be mandatory, and refers to the decision of the Third Circuit Court of Appeals in *Spinetti v. Service Corp. International,* 324 F.3d 212 (3d Cir. 2003), as support for this proposition. *Spinetti* does state that there is a strong federal policy favoring the award of attorney fees to a prevailing party in antidiscrimination litigation. However, *Spinetti* was decided under title VII, 42 U.S.C. §2000e-5(k), and the Age Dis-

---

11. AHLA rules, Rule 6.06 at A-18.
12. *Id.*

crimination in Employment Act, 29 U.S.C. §§626(b) and 216(b), both of which are federal statutes. Neither statute is involved in this case. Moreover, even under these federal anti-discrimination statutes an award of attorney fees to the prevailing party is discretionary. What the Third Circuit found objectionable in *Spinetti* was an arbitration clause that required each party to bear its own costs and attorney fees *regardless of the outcome of the proceeding.*

In the instant case the relevant statute is the PHRA, which authorizes, but does not require, an award of attorney fees to the prevailing party. We believe that the discretion of the arbitrator on this issue under the AHLA rules is the same as the discretion of a court under the PHRA; but to be sure, we require that the defendants so stipulate as a condition of our order for AHLA arbitration.

### III. *The Cost of AHLA Arbitration*

The plaintiff states that her breach-of-contract claim is limited to the recovery of her wage loss of $23,915, and that her PHRA claim is limited to the same wage loss plus emotional distress damages and attorney fees. Consequently, the plaintiff has agreed through her counsel that the amount in controversy does not exceed $50,000, exclusive of interest and costs. This brings her claims within the limit for compulsory court-attached arbitration in Lehigh County.

The plaintiff prefers court-attached arbitration, rather than AHLA arbitration, because she claims that AHLA arbitration is prohibitively expensive. We believe the plaintiff has a valid point. To submit her claim to the AHLA she must first advance an administration fee of

$2,475 ($2,000 plus $475 for each party more than two). This compares with the court filing fee of $115. Then, after the arbitrator is appointed, he or she may require the parties to deposit an additional sum to cover his or her fees and expenses, which may be substantial. By way of comparison, in a court-attached arbitration there is no deposit required; the county pays the arbitrators' fees;[13] and the arbitrators are not permitted to charge travel expenses. As noted above, at the conclusion of an AHLA arbitration, the arbitrator may assess the arbitration costs in favor of the prevailing party for good cause, but there is no assurance that the arbitrator will do so, in which case these costs are allocated equally among the parties. In addition to the above costs, in both AHLA arbitration and court-attached arbitration each party bears his or her own attorney fees, unless the arbitrator(s) make an award of attorney fees to the prevailing party.

The plaintiff argues that the heavy financial costs of the AHLA arbitration, especially when compared to court-attached arbitration, have a chilling effect on persons seeking to vindicate their rights under the PHRA. Therefore, the plaintiff contends, the agreement for AHLA arbitration, insofar as it applies to sex discrimination claims under the PHRA, is invalid as undermining the strong public policy against sex discrimination expressed in the PHRA.

A similar argument has been advanced in the federal courts where the ability to enforce federal statutory rights has been at issue. The United States Supreme Court ad-

---

13. If a party desires to appeal from the arbitrators' award, he or she must pay an appeal fee of $600 to defray the cost of the arbitrators.

dressed such an issue in *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79 (2000) (5-4), a case that involved claims by a mobile home purchaser under the Federal Truth-in-Lending Act, 15 U.S.C.A. §1601 et seq. and the Federal Equal Credit Opportunity Act, 15 U.S.C. §1691-1691d. The arbitration agreement in *Green Tree* did not specify the arbitral forum and was silent on the allocation of costs and fees. The claimant argued that these omissions created a risk that she would have to bear prohibitive costs in order to pursue her statutory rights through arbitration. The court noted that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90. The court held, however, that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Whether this burden is met must be determined on a case-by-case basis. In *Green Tree,* a narrow majority of the justices concluded that the claimant had not met this burden, overruling the Eleventh Circuit Court of Appeals on this issue.

Recent circuit court decisions have further developed the applicable standard. In *Morrison v. Circuit City Stores Inc.,* 317 F.3d 646 (6th Cir. 2003), a consolidated appeal, the Sixth Circuit reviewed the arbitration costs in two cases involving federal discrimination claims by individuals against their former employers. Following *Green Tree,* the court recognized that the potential for large arbitration costs and fees may deter potential litigants from seeking vindication of federal rights in some

cases, and that where this is so, the arbitral forum is not an effective or adequate substitute for a judicial forum. The court adopted this test: would the arbitration costs and fees deter a substantial number of similarly situated litigants from pursuing enforcement of their federally protected rights? If so, the arbitration clause is invalid and unenforceable in whole or in part. In both of the cases under review the court held invalid a provision for splitting the arbitration costs between the employer and employee because the expense the employee was exposed to would be a substantial deterrent in pursuing his claims. The court further held that this cost-splitting provision was severable from the remainder of the arbitration agreement, which was valid.

In *Spinetti v. Service Corporation International, supra,* the Third Circuit Court of Appeals reached a similar conclusion. The arbitration agreement provided that each party was to pay (1) his own costs and attorney fees regardless of the outcome and (2) one-half of the arbitrator's fee and any other costs of administering the arbitration. The court affirmed the district court's finding that the claimant had met her burden under *Green Tree* of showing that the costs and fees of arbitration made that procedure prohibitively expensive. As in *Morrison, supra,* the court severed the offending parts of the arbitration agreement, leaving the balance of the agreement enforceable. The court ordered the employer to advance all the costs of arbitration, with the final responsibility for attorney fees to be determined in accordance with the appropriate statute.

These federal decisions are not binding on this court. However, they are from highly regarded tribunals, and

we find their approach persuasive. Applying the *Morrison* test here, we find that the costs and fees associated with an arbitration under AHLA rules would deter a substantial number of similarly situated employees or former employees from seeking to enforce their rights under the PHRA. The requirement of an initial administration fee of $2,475, plus a potentially large deposit for the arbitrator's fees and expenses, with no assurance that any of these funds would be returned, is a substantial deterrent to arbitration. It is likely to have a chilling effect on any individual recently fired from a $40,000-a-year job, especially where the amount in controversy is a wage loss of $23,915 and emotional distress damages. Therefore, we hold that the arbitration clause in the agreement is invalid and unenforceable to the extent that it requires the plaintiff to pay fees and costs in excess of those that would be payable in court-attached arbitration.

We do not base our decision on a finding that the agreement is a contract of adhesion; it is not. We find persuasive, however, the fact that the PHRA reflects a very important public policy in Pennsylvania. A contract provision that impedes a party's ability to seek redress for violations of this important remedial statute is contrary to public policy and is therefore null and void.

Private arbitration at its best is a cost-effective method of resolving disputes. However, where the applicable arbitration rules create a financial burden far in excess of the cost of a judicial forum, thereby deterring individuals from enforcing their statutory rights, arbitration fails in one of its important purposes. In such a circumstance either the arbitration rules must be changed or the agreement for arbitration will be null and void in its entirety.

In this case, the agreement contains a severability clause in paragraph 22.[14] Under this paragraph, if any provision in the agreement is held to be unenforceable, the other provisions of the agreement are not to be affected. The agreement is to be construed as if it had never contained the unenforceable provision. This is consistent with the general principle of Pennsylvania law that if less than an entire agreement is invalid, and the invalid provision is not an essential part or the primary purpose of the agreement, then the remaining portions of the agreement are enforceable. *Huber v. Huber,* 323 Pa. Super. 530, 470 A.2d 1385 (1984); *Forbes v. Forbes,* 159 Pa. Super. 243, 248-49, 48 A.2d 153, 156 (1946); Restatement (Second) of Contracts §184(1) (1981). To borrow Judge Aldisert's analogy in *Spinetti,* we should not "throw the baby out with the bath water." *Spinetti, supra* at 223. This is especially true where the "baby" is an arbitration clause, a favored method of dispute resolution.

The allocation of arbitration fees and costs is not an essential part or the primary purpose of the parties' agreement to resolve their disputes by arbitration. Therefore, we do not find it necessary to nullify the entire arbitration clause in paragraph 17. Nevertheless, we cannot simply rewrite the arbitration clause to impose all fees and costs on the P.C. The P.C. is not a large multinational corporation with unlimited resources. It may be that the P.C. will also find the AHLA arbitration costs unduly burdensome in relation to the amount in controversy.

---

14. Complaint, exhibit "A" at 11.

The root of the problem is the unusually high admin-istration fee and costs under the AHLA rules, when court-attached arbitration is available for a nominal charge. Somebody has to pay these fees and costs if the AHLA arbitration is to proceed. We have ruled that these fees and costs, to the extent they exceed the fees and costs for court-attached arbitration, may not be imposed on the plaintiff. For similar reasons, we believe we should not impose these fees and costs on the P.C. Our solution is to give the P.C. the option of (a) proceeding with court-attached arbitration on all claims,[15] or (b) having the case arbitrated under the AHLA rules with the P.C. being re-sponsible for the administration fees in excess of the $115 filing fee for a court action and for all fees and expenses of the arbitrator. We have fashioned our order accord-ingly.

## CONCLUSION

For the reasons stated, the defendants' preliminary ob-jections are sustained and the complaint dismissed, pro-vided that the defendants file a timely stipulation with the clerk of courts agreeing that (a) the arbitrator is au-thorized to award attorney fees to the prevailing party on the PHRA claims on the same basis that such fees may be awarded in a judicial forum, and (b) the P.C. will pay the AHLA administration fee to the extent it exceeds the $115 filing fee for a court action as well as the fees and expenses of the AHLA arbitrator. If the defendants do not timely file such a stipulation, then the prelimi-

---

15. As a practical matter the PHRA and breach-of-contract claims must be tried together since they arise from a common set of facts.

nary objections are overruled and the parties shall proceed with court-attached arbitration.

ORDER

Now, January 21, 2005, upon consideration of the defendants' preliminary objections to the second amended complaint and plaintiff's response thereto, after review of the parties' briefs and oral argument and for the reasons set forth in the accompanying opinion, it is ordered as follows:

(1) The preliminary objections are sustained, and the second amended complaint is dismissed without prejudice to the parties' right to proceed with arbitration of their dispute under the arbitration rules of the American Health Lawyers Association; provided that the defendants file with the clerk of court, within 15 days from the date of this order, a written stipulation agreeing (a) that under the American Health Lawyer Association arbitration rules the arbitrator is authorized to award attorney fees to the prevailing party on the same basis that such fees may be awarded in a court action under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq., and (b) that the defendants will be responsible for payment of all administration fees in excess of the $115 filing fee for a court action and for all fees and expenses of the arbitrator.

(2) If a stipulation as aforesaid is not timely filed, the preliminary objections are overruled and the defendants are directed to file an answer to the second amended complaint within 20 days from the date of this order. In addition, since the amount in controversy does not exceed

$50,000, exclusive of interest and costs, the case shall then be submitted to compulsory arbitration under Leh.R.C.P. 1301 et seq., to be scheduled by the Civil Operations Office on the next available arbitration list after August 1, 2005.